Attachment A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUN 1 0 2021
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

Daniel Emerson Norton

*Your full name*

**FEDERAL CIVIL RIGHTS COMPLAINT**
(*BIVENS* ACTION)

v.

Civil Action No.: 3:21 cv 88
*(To be assigned by the Clerk of Court)*

F.J. Bowers, Patricia Corbin,

Christopher Meyer, Ms. Edgell,

Mr. D. Jones, Ms. Hoffman

Groh
Trumble
Sims

*Enter above the full name of defendant(s) in this action*

## I. JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**. The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II. PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

    A.  Name of Plaintiff: Daniel Emerson Norton  Inmate No.: 90201-053
        Address: Federal Correctional Institution, P.O. Box 1000
        Morgantown, West Virginia 26507

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

**Attachment A**

B.    Name of Defendant: F.J. Bowers
Position: Warden
Place of Employment: Morgantown FCI
Address: Federal Correctional Institution, P.O. Box 1000
Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?  ☒ Yes    ☐ No

If your answer is "YES," briefly explain: The Defendant was (and currently is) the Warden of the Bureau of Prison's Morgantown FCI facility.


B.1    Name of Defendant: Patricia Corbin
Position: Physician's Assistant (PA)
Place of Employment: Morgantown FCI
Address: Federal Correctional Institution, P.O. Box 1000
Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?  ☒ Yes    ☐ No

If your answer is "YES," briefly explain: The Defendant was the assigned PA to the Plaintiff from December 30, 2019 through at least March 2021 by the Bureau of Prison's Morgantown FCI facility.


B.2    Name of Defendant: Christopher Meyer
Position: Physician's Assistant (PA)
Place of Employment: Morgantown FCI
Address: Federal Correctional Institution, P.O. Box 1000
Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?  ☒ Yes    ☐ No

If your answer is "YES," briefly explain: The Defendant was the acting PA for the Plaintiff from December 2020 to present when PA Corbin was not at the Bureau of Prison's Morgantown FCI facility.

B.3   Name of Defendant: Ms. Hoffman
Position: Director / Supervisor of Health Services
Place of Employment: Morgantown FCI
Address: Federal Correctional Institution, P.O. Box 1000 Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

If your answer is "YES," briefly explain: The Defendant is the Director / Supervisor of Health Services at the Bureau of Prison's Morgantown FCI facility.

B.4   Name of Defendant: Ms. Edgell
Position: Nurse
Place of Employment: Morgantown FCI
Address: Federal Correctional Facility, P.O. Box 1000 Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

If your answer is "YES," briefly explain: The Defendant is a nurse at the Bureau of Prison's Morgantown FCI facility.

**Attachment A**

B.5  Name of Defendant: Mr. D. Jones
Position: Unit Manager for Bates Unit
Place of Employment: Morgantown FCI
Address: Federal Correctional Facility, P.O. Box 1000
Morgantown, West Virginia 26507

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

If your answer is "YES," briefly explain: The Defendant is the Unit Manager for the unit (Bates( that the Plaintiff has been assigned by the Federal Bureau of Prison's Morgantown FCI facility.

III.  **PLACE OF PRESENT CONFINEMENT**

Name of Prison/ Institution: Morgantown FCI

A.  Is this where the events concerning your complaint took place?
☒ Yes   ☐ No

If you answered "NO," where did the events occur?

B.  Is there a prisoner grievance procedure in the institution where the events occurred?   ☒ Yes   ☐ No

C.  Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
☒ Yes   ☐ No

D.  If your answer is "NO," explain why not:

E.  If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed

**Attachment A**

and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1 <u>BP-8½ (12/19/2020 and 3/9/2020) Both ignored</u>

LEVEL 2 <u>BP-9 (1/7/2021 and 1/22/2021) Both Denied</u>

LEVEL 3 <u>BP-10 to the Regional Office 1/22/2021 Denied</u>

IV. PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

    A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?   ☐ Yes   ☒ No

    B.    If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

        1.    Parties to this previous lawsuit:

            Plaintiff(s): _____

            Defendant(s): _____

        2.    Court: _____
            *(If federal court, name the district; if state court, name the county)*

        3.    Case Number: _____

        4.    Basic Claim Made/Issues Raised: _____
            _____
            _____
            _____

        5.    Name of Judge(s) to whom case was assigned:
            _____

        6.    Disposition: _____
            *(For example, was the case dismissed? Appealed? Pending?)*

        7.    Approximate date of filing lawsuit: _____

**Attachment A**

        8.    Approximate date of disposition. Attach Copies:_____

C.    Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
        ☐ Yes    ☐ No

D.    If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

_____
_____
_____
_____

E.    Did you exhaust available administrative remedies?
        ☐ Yes    ☐ No

F.    If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.

_____
_____
_____
_____
_____

G.    If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

        1.    Parties to previous lawsuit:

**Attachment A**

Plaintiff(s): _____

Defendant(s): _____

2. Name and location of court and case number:
   _____
   _____
   _____

3. Grounds for dismissal:   ☐ frivolous   ☐ malicious
   ☐ failure to state a claim upon which relief may be granted

4. Approximate date of filing lawsuit: _____

5. Approximate date of disposition: _____

## V. STATEMENT OF CLAIM

State here, as **BRIEFLY** as possible, the _facts_ of your case. Describe what _each_ defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)**

CLAIM 1: __Willful Medical Deliberate Indifference_____
_____
_____
_____
_____
_____

Supporting Facts: __Supporting facts are listed on the attached "Exceptional__

**Attachment A**

<u>Circumstances, Willful Medical Deliberate Indifference" pages.</u>
<u>The attached pages detail the lack of treatment by Morgantown FCI's</u>
<u>Health Services Department (HSM hereafter) and the willful attempt</u>
to deny the existence of the Plaintiff's medical condition by the Unit
Manager and nurse.   <u>CONTINUED ON ATTACHED PAGES</u>

CLAIM 2: _____

_____
_____
_____
_____

Supporting Facts: _____

_____
_____
_____
_____

CLAIM 3: _____

_____
_____
_____
_____

Supporting Facts: _____

_____
_____
_____
_____

CLAIM 4: _____

_____
_____
_____
_____

Supporting Facts: _____

_____

**CLAIM 1 SUPPORTING FACTS CONTINUED**

**I Exceptional Circumstances, Willful Medical Deliberate Indifference**

On May 19, 2020, the Plaintiff was taken from Bates Unit at Morgantown FCI to HSM by CO John Gribble. The Plaintiff was suffering from severe nausea, headache, shaking and dizziness. After more than four hours in HSM, it was decided by Dr. Lubna Khan (compound physician) and PA Patricia Corbin that he needed to be taken to Mon General Hospital via ambulance (see Exhibit A). When the Plaintiff arrived at the hospital, he was given a CT Scan by Dr. Evan Kupec (see Exhibit B). The Plaintiff was admitted to the hospital for further testing and evaluation.

On May 21, 2020, the Plaintiff returned from the hospital to Morgantown FCI. The Plaintiff was not told the results of any of the tests, nor was he told the diagnosis determined by the hospital.

From May 21, 2020 unit June 3, 2020, the Plaintiff remained in the Special Housing Unit (SHU) at Morgantown FCI. The Plaintiff was visited by Dr. Khan, PA Corbin, Dr. Abby Mc Cabe (psychology) and nurses Edgell and Shaffer. Each individual was told by the Plaintiff that the symptoms continued, but denied the Plaintiff ibuprofen that he requested. Instead, the Plaintiff was told to purchase ibuprofen from the commissary when he returned to his unit.

On June 26, 2020, the Plaintiff sent a message (see attachment C) to PA Corbin asking for a COVID-19 test due to the symptoms that persisted (headache, dizziness, nause and shaking). PA Corbin responded "you do not meet the criteria for testing"(see Exhibit C). PA Corbin did not offer treatment for the continued symptoms.

From late June 2020 through the beginning of December 2020, the Plaintiff spoke to PA Corbin on at least 7 occasions regarding the worsening symptoms that he was suffering. PA Corbin's only suggestion to the Plaintiff was that he purchase more ibuprofen and take 1600 mgs per day. A dosage that is highly unsafe for continued usage. PA Corbin told the Plaintiff that Dr. Khan left Morgantown FCI in July and there was no one on the compound to see him.

**NOTE: Referenced "Exhibits" had not been included due to filing limitations.**

On December 2, 2020, the Plaintiff was taken to Mon General's Cheat Lake Road, Morgantown facility for an appointment with neurologist Dr. Dominika Lozowska. Dr. Lozowska informed the Plaintiff that on the CT Scan that was conducted May 19, 2020, it was revealed that he has a growing arachnoid cyst on his brain. The doctor took the Plaintiff through the CT Scan on her computer frame by frame and commented "it is the size of an eyeball". The doctor told the Plaintiff that the cyst was the cause of his symptoms and asked what treatment he was receiving for the growth. Dr. Lozowska printed a copy of the Final Report from the CT Scan (see Exhibit B) and gave it to the Plaintiff. Prior to this appointment the Plaintiff had no knowledge of the growth. The doctor ordered an MRI, additional testing and prescribed medication for the pain. The doctor told the Plaintiff that he must return within one month with a completed MRI to plot out a course of treatment. As of May 22, 2021, the Plaintiff has not returned to the neurologist or received any treatment.

On December 4, 2020, the Plaintiff sent an email to PA Corbin asking about the MRI and follow up treatment. The Plaintiff specifically did not ask about the CT Scan **(emphasis added)**. This email is included in PA Corbin's response on December 8, 2020 (see Exhibit E).

On December 8, 2020, the Plaintiff received a response from PA Corbin (later PA Corbin claimed that PA Meyer responded). The email that the Plaintiff received (see Exhibit E) stated "CT was negative" and "no mention of MRI on discharge paperwork". Both statements are blatantly false. In order for PA Corbin (or Meyer) to mention the CT Scan she had to be in possession of the Final Report that the Plaintiff gave Nurse Shaffer when he returned from the December 2, 2020 appointment or the medical record in HSM would have noted the CT Scan. It was alleged by PA Corbin that the record did not exist and there was no mention of the cyst. Therefore, the PA that answered the email on December would have had to be in possession of the Final Report and inexplicably lied to the Plaintiff

On December 19, 2020, the Plaintiff sent an email to Warden F.J. Bowers (see Exhibit F) outlining the entire situation regarding his medical condition, lack of treatment and worsening symptoms. The email constitutes a **BP-8½** informal resolution and was, to date, igored by the Warden.

Page Two

On December 28, 2020, the Plaintiff was given a copy of a blood report done at Morgantown FCI. The report included a Bureau of Prison's Health Services Problem Report (see Exhibit G). The report should include all medical issues related to the inmate during his incarceration. The report that the Plaintiff received references the May 19, 2020 event simply as vertigo. It does not mention the hospitalization, the finding of the CT Scan, the subsequent visits to HSM, the December 2, 2020 doctor's visit and most notably the arachnoid cyst **(emphasis added).**

On January 7, 2021, having not received a response from the Warden on the Plaintiff's email that was sent on December 19, 2020, the Plaintiff submitted a formal BP-9 to the Warden (see Exhibit H). The BP-9 requested treatment and outlined the issues he had with HSM. Notably on the Warden's denial , the Plaintiff received as his denial a **COVID-19 Form Letter.** When the denial was given to the PLaintiff by Mr. D. Jones, the Plaintiff asked if the wrong paperwork was attached due to the COVID-19 denail. Mr. D. Jones confirmed that it was correct and when asked by the Plaintiff if the Warden read the submitted BP-9, Mr. D. Jones responded "apparently not" **(emphasis added).**

On January 11, 2021, the Plaintiff was paged to PA Corbin's office at 1 PM. When the Plaintiff arrived, he was asked how he was feeling. The Plaintiff responded that he had worsening symptoms related to the cyst on his brain. The Plaintiff asked PA Corbin when he would be sent for an MRI. PA Corbin responded that the Plaintiff had no cyst on his brain and that no MRI had been ordered. The Plaintiff asked PA Corbin to check the medical file, particularly the discharge paperwork that the Plaintiff handed Nurse Shaffer when he returned from the neurologist. PA Corbin searched the HSM office and found the paperwork. PA Corbin claimed that it had not been scanned into the system. PA Corbin admitted that the discharge paperwork  noted  the cyst and also ordered an MRI. PA Corbin also claimed that she was "having her should fixed " and she "did not answer the December 4, 2020 email..... it was Meyer that lied to you.

On January 18, 2021,the Plaintiff was informed that he tested positive for COVID-19 by Nurse Edgell. Nurse Edgell told the Plaintiff that he was being put in an upper bunk in D wing. The Plaintiff was told by Nurse Edgell that "unless you are missing a leg, you are going on a top bunk". This was after the Plaintiff told Nurse Edgell that he could not get up on a top bunk due to his cyst and the

Page Three

medication (Nortriptyline, see Exhibit X) that he was taking. The medication is controlled and dispensed by the nurse (Edgell) daily to the Plaintiff. When the Plaintiff explained his medical situation, Nurse Edgell threatened him and summoned the acting Captain. Captain Reich arrived at the unit and told the Plaintiff that he must go to a top bunk or go into the SHU (Special Housing Unit) and would be written up. The Captain claimed that HSM had no record of any illness that the Plaintiff was suffering. The Captain's only solution was to force the Plaintiff to sleep on the cement floor against a window during a snow storm.

On January 19, 2021, Plaintiff was sent to HSM for COVID-19 symptoms aggrevated by sleeping on the floor. The Plaintiff was given an EKG and prescribed anti-inflamatory medication by PA Meyer. When the Plaintiff returned to the unit, he was summoned to Mr. D. Jones office. Mr. D. Jones again threatened the Plaintiff and said he would contact HSM. One hour later the Plaintiff was called to Mr. D. Jones office and told "Health Services is calling bullshit on your cyst... you are a healthy care one inmate with no medical issues". Mr D. Jones repeated the threat of being written up and sent to the SHU. The Plaintiff had no choice but to take an upper bunk and was aided by other inmates getting up and down.

On January 22, 2021 the Plaintiff submitted a BP-9 to the Warden and a BP-10 to the Bureau of Prison's Regional Office in Annapolis Junction, Maryland (see Exhibits I and H). The formal complaints outlined the treatment of the Captain, Nurse Edgell and Mr. D. Jones. The formal complaints also refer to the fact that HSM had acknowledged the Plaintiff's medical condition on January 11, 2021 and submitted a MRI request to the Regional Office on January 5, 2021 for the MRI that HSM claimed had never been ordered.

On February 11, 2021, the Plaintiff sent an email to Bates Unit Counselor (CO) John Gribble asking to be removed from Landscape duty due to his medical condition (see Exhibit J). The Plaintiff had not worked in Landscape since his return from the neurologist December 2, 2020.

On February 23, 2011, the Plaintiff sent a message to PA Corbin seeking clarification regarding the ordering of the MRI that had been allegedly ordered on January 5, 2021 and also why HSM had "called bullshit" on his medical condition (see Exhibit K). The Plaintiff never received a response to his email.

On March 5, 2021, the Plaintiff sent two messages to HSM Supervisor/Director Ms. Hoffman asking about the refill of the Nortriptyline and other issues related to the Plaintiff's lack of treatment (see Exhibit L). The prescription issued by the neurologist (see Exhibit X) called for 2 refills of 30 pills. 89 pills were dispensed by HSM from December 4, 2020 through March 5, 2021. the Plaintiff asked Ms. Hoffman who was qualified to make the determination that more medication should be prescribed and who was qualified to chart a course of treatment after the MRI was administered on March 12. The Plaintiff received no response from Ms. Hoffman.

On March 9, 2021, the Plaintiff sent a message to PA Meyer complaining of worsening symptoms. Having received no response, the Plaintiff spoke to CO Martin in Bates unit and asked him to call PA Meyer. At, 1:15 PM, PA Meyer told CO Martin that he was refusing to see the Plaintiff.

On March 12, 2021, the Plaintiff was finally sent out for an MRI. To this date (May 23, 2021) the Plaintiff has not been sent to the neurologist to review the MRI.

From March through May 2021, the Plaintiff has sent emails to HSM PA's Corbin and Meyer regarding worsening symptoms. The Plaintiff sent emails and BP-9's to the Warden from December 2020 through March 2021. The Plaintiff has discussed his medical situation and sought advise from Psychology Dr. Abby McCabe and has been ignored. On the Bureau of Prison's Pain Management Report there is only one entry for Advil on January 8, 2020 (see Exhibit Z). No attempt has been made by either HSM or any other BOP employee to address the pain suffered by the Plaintiff. The only suggestion from PA Meyer regarding the Plaintiff's pain was to increase the dosage of Nortriptyline to double (50 mgs). To date 168 pills have been given to the Plaintiff when only 60 were prescribed. No doctor has seen the Plaintiff in order to determine if the increase is safe or appropriate.

April 11, 2021, the Plaintiff sent an email to PA Meyer regarding the lack of care he has experienced (see attached AA). The Plaintiff noted 42 emails and contacts with HSM complaining of worsening symptoms and the need for care. When the Plaintiff was hospitalized on May 19, 2021, Mon General issued Discharge Instructions that state "If condition worsens ...contact physicians office or go immediately to the emergency department" (see Exhibit Y). The Plaintiff's condition continues to worsen, but HSM and specifically PA Meyer has refused medical attention and has not sent the Plaintiff to a qualified licensed physician.

Page Five

**Attachment A**

_____
_____
_____

CLAIM 5: _____
_____
_____
_____
_____
_____

    Supporting Facts: _____
_____
_____
_____
_____

VI. <u>INJURY</u>

    Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

I have been denied medical attention for the arachnoid cyst on my brain. I have suffered for more than one year without treatment. There still has been no treatment offered by Health Services at Morgantown FCI. The BOP has a legal obligation to provide needed treatment to inmates, disclose medical information and documentation to inmates and their attorneys and not deliberately lie to inmates in an attempt to deny resources provided by the United States government to insure the health of inmates.

VII. <u>RELIEF</u>

    State **BRIEFLY and EXACTLY** what you want the Court to do for you. _Make no legal arguments. Cite no cases or statutes._

Award the Plaintiff the cost of medical services for the needed treatment (approximately $500,000), $2,000,000 pain and suffering and punitive damages as the Court sees fit.

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate. Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at __Morgantown, West Virginia__ on __May 21, 2021__.
  (Location)   (Date)

_____
Your Signature

Attachment E

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Daniel Emerson Norton

*Your full name*

v.

Civil Action No.: 3:21cv88

F.J. Bowers, Patricia Corbin,

Christopher Meyer, Ms. Edgell,

Mr. D. Jones, Ms. Hoffman

*Enter above the full name of defendant(s) in this action*

## Certificate of Service

I, Daniel Emerson Norton (your name here), appearing *pro se*, hereby certify that I have served the foregoing Federal Civil Rights Complaint (title of document being sent) upon the defendant(s) by depositing true copies of the same in the United States mail, postage prepaid, upon the following counsel of record for the defendant(s) on May 27, 2021 (insert date here):

(List name and address of counsel for defendant(s))

(sign your name)