IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**DANIEL EMERSON NORTON,**

       **Plaintiff,**

**v.**                                  **CIVIL ACTION NO.: 3:21-CV-88
(GROH)**

**F. J. BOWERS,
PATRICIA CORBIN,
CHRISTOPHER MEYER,
MS. EDGELL,
MR. D. JONES, and
MS. HOFFMAN,**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On June 10, 2021, the *pro se* Plaintiff, a federal prisoner who was previously incarcerated at FCI Morgantown, in Morgantown, West Virginia, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[1]

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the petition be denied and dismissed

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:21-CV-88, unless otherwise noted.

without prejudice.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Plaintiff's Complaint

Plaintiff initiated this action alleging his rights were violated while he was incarcerated in the Northern District of West Virginia.[2]  The complaint alleges a single ground for relief, that the Defendants were deliberately indifferent to his medical needs, specifically a delay or denial of medical care related to an arachnid cyst on his brain.  ECF No. 1 at 7 – 8, 10 – 13.

Plaintiff contends that the BOP provided him diagnostic treatment on or about May 19, 2020, but that he was not given results from any of the tests performed until December 2, 2020, when he was treated by neurologist Dr. Dominika Lozowska.  Id. at 9 – 10.  According to Plaintiff, "[p]rior to this appointment the Plaintiff had no knowledge of" the "growing arachnoid cyst on his brain."  Id. at 10.  Plaintiff asserts that he did not receive further treatment for his cyst, other than an MRI on March 12, 2021.  Id. at 12 – 13.  Plaintiff claims that he has not been treated by a neurologist following his MRI.  Id. at 13.  However, Plaintiff contends that he has experienced worsening symptoms from his condition, including "severe nausea, headache, shaking and dizziness."  Id. at 9, 11, 13.

Plaintiff further contends that on January 18, 2021, he tested positive for COVID-19, and was transferred to another cell, on an upper bunk.  Id. at 11.  Plaintiff contested his bunk assignment because he claimed he was unable to reach the top bunk, and

---

[2]  According to a change of address form filed by Plaintiff on August 2, 2022, his address is now at a private address in Gresham, Oregon.  ECF No. 63.  The change of address form was executed at FDC Honolulu on July 28, 2022.  Id.  However, according to the Bureau of Prisons inmate locator website, Plaintiff is now incarcerated at Sheridan FCI in Sheridan, Oregon.  https://www.bop.gov/inmateloc/.

instead slept on the floor, which he claimed aggravated his COVID-19 symptoms.  Id. at 11 – 12.

According to the complaint, Plaintiff filed grievances at levels 1 through 3, which he identified as BP-8½, BP-9 and BP-10.  Id. at 5.  Further, Plaintiff indicated that his two attempts to obtain relief through filing a grievance at level 1 were "ignored", his two attempts at level 2 were both denied, and his sole attempt to obtain relief at level 3 was denied.  Id.  Plaintiff attached as exhibits Administrative Remedy number 1065621-F1, received January 21, 2021 [ECF No. 1-1]; Administrative Remedy number 1065994-F1, received January 25, 2021 [ECF No. 1-2 at 2]; and an unnumbered Regional Administrative Remedy Appeal date-stamped on January 29, 2021 [ECF No. 1-2 at 1].

Plaintiff asserts he suffered, "for more than a year without treatment." Id. at 14.  For relief, Plaintiff seeks $500,000.00 for future medical expenses and $2,000,000.00 for pain and suffering and punitive damages.  Id.

### B.   Defendants' Motion to Dismiss

Defendants filed a motion to dismiss, memorandum of law, and exhibits in support thereof on May 10, 2022.  ECF Nos. 55, 56, 56-1 through 56-7.  Therein, Defendants contend that this Court lacks subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies.  ECF No. 56 at 6 – 7.  Defendants contend that as of July 26, 2021, after the instant suit was filed, Plaintiff had filed 13 administrative remedies, only one of which was appealed to the Central Office.  Id. at 7.  However, that remedy did not address the claims in the instant suit.  Defendants argue that regardless of whether Plaintiff **_pursued_** some administrative remedies related to the instant claims, Plaintiff failed to **_exhaust_** his administrative remedies as to the instant claims.  His failure to exhaust denies

3

this Court of subject matter jurisdiction.  Finally, Defendants assert that "Plaintiff tacitly admits in his Complaint that he did not exhaust" his administrative remedies.  Id.

Defendants also argue that two defendants, Corbin, and Meyer, are entitled to absolute immunity because they are U.S. Public Health Service employees.  Id. at 7 – 9. Further, Defendants argue that Plaintiff failed to allege sufficient personal involvement of three defendants, Bower, Jones, and Hoffman, all three of whom acted in a supervisory capacity.  Id. at 9 – 11.  As to the merits of Plaintiff's claims, Defendants argue that Plaintiff cannot show that Defendants acted with deliberate indifference to a serious medial need. Id. at 11 – 17.  Finally, Defendants argue that they are all entitled to qualified immunity. Id. at 17 – 18.

### C.      Plaintiff's Response in Opposition

On June 2, 2022, Plaintiff filed a response in opposition to the motion to dismiss. ECF No. 61.  Plaintiff contends that despite the representations of Defendants, he did not admit he failed to exhaust his administrative remedies.  Id. at 1.  Rather, Plaintiff asserts that he was both thwarted from exhausting his administrative remedies, and also made a substantial effort to exhaust his remedies:

> The Plaintiff submitted his first Administrative Remedy as an informal (BP-8) email request to Defendant Bowers on December 19, 2020. This was ignored by Defendant Bowers. The Plaintiff then submitted a BP-9 on January 7, 2021 (Exhibit H) that was [sic] February 16, 2021 (Exhibit H2) with a COVID-19 Compassionate Release form letter constituting improper screening of a grievance. On January 29, 2021, the Plaintiff submitted a BP-10 (Exhibit I B) to the Regional Office that was rejected by Defendant Jones who told the Plaintiff that the BP-10 was never submitted, but rejected, thus thwarting the entire Administrative Remedy process.
> . . . Plaintiff made a substantial effort to exhaust his remedies in the face of these obstacles. The rejection without submission by Defendant Jones thwarted the process to the

4

> point where further pursuit of remedies was futile. . . . The
> Plaintiff has met the requirement for exhaustion based on
> what was available to him at FCI Morgantown. Further
> submissions would have been futile.

Id. at 6.

Plaintiff further argues that his complaint against Defendants Bowers, Jones, and Hoffman asserts claims against each of those people in their individual, not supervisory capacities. Id. at 2. Further, Plaintiff argues that his medical records and the records submitted by Defendants demonstrate that Defendants were deliberately indifferent to his serious medical needs. Id. at 3 – 4, 7 – 8. Plaintiff also contends that he was initially denied administrative remedy forms on January 19, 2021, regarding his claim he was forced to sleep on the floor on January 18, 2021. Id. at 5. However, Plaintiff concedes that by January 21, 2021, he had obtained a bottom bunk pass. Id.

### III.   LEGAL STANDARD

#### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[3] is designed largely to discourage the
> filing of, and waste of judicial and private resources upon,
> baseless lawsuits that paying litigants generally do not
> initiate because of the costs of bringing suit and because

---

[3] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> of the threat of sanctions for bringing vexatious suits under
> Federal Rule of Civil Procedure 11. To this end, the
> statute accords judges not only the authority to dismiss
> a claim based on an indisputably meritless legal theory,
> but also the unusual power to pierce the veil of the
> complaint's factual allegations and dismiss those claims
> whose factual contentions are clearly baseless.
> Examples of the former class are claims against which it
> is clear that the defendants are immune from suit. . .

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

## B.   Civil Rights Actions Under Bivens.

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In FDIC v. Meyer, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a Bivens claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional
> deprivation, he may bring a *Bivens* claim against the
> offending individual officer, subject to the defense of qualified
> immunity. The prisoner may not bring a *Bivens* claim against

> the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.  Further, in a <u>Bivens</u> case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights.  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>See</u> <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[4] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

**C.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. <u>Estelle v. Gamble, 429 U.S. 97, 106 (1976)</u>; <u>Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972)</u> (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

---

[4] The Court notes that <u>Bivens</u> actions and § 1983 actions are both civil rights actions, and that <u>Bivens</u> actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp v. Catrett, 477 U.S. 317, 322 – 23 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a

party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.


## IV.    ANALYSIS

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with

respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524.

In his complaint Plaintiff asserts that he has completed the prisoner grievance procedure. ECF No. 1 at 5. However, a review of Plaintiff's assertion shows that the highest level of remedy sought was at the regional level on January 22, 2021, which remedy was denied. Id.

Moreover, along with their motion to dismiss or for summary judgment, Defendants filed records related to Plaintiff's administrative remedies, which show that Plaintiff did not exhaust his remedy at the Central Office as relates to the claims contained in his complaint. One of those exhibits is the declaration of Howard Williams, a legal assistant at the Mid-Atlantic Regional Office of the Federal Bureau of Prisons. ECF No. 56-1. Mr. Williams states that, "While in BOP custody, Plaintiff has filed a total of thirteen (13) administration remedy submissions. Of these thirteen (13) submissions, only one was

appealed to the Central Office.  Nonetheless, that submission was not relevant to the present matter, as it pertained to a request for admittance into a program offered at the facility. . . Thus, Plaintiff did not exhaust his administrative remedies."  Id. at 4, ¶ 5. Additionally, attached to Mr. Williams' declaration was the Administrative Remedy Generalized Retrieval form for Plaintiff which includes all information about Plaintiff's administrative remedies filed with the BOP.  ECF No. 56-1 at 6 – 13.

A review of the "Administrative Remedy Generalized Retrieval" document filed by Defendants shows the following remedies were filed:

1. Remedy ID Number 1015316-F1, received April 22, 2020, requesting admittance to RDAP program [Id. at 7];

2. Remedy ID Number 1015322-F1, received April 22, 2022, requesting admittance to RDAP program [Id.];

3. Remedy ID Number 1019059-F1, received May 12, 2020, Reconsideration of RDAP Denial [Id. at 8];

4. Remedy ID Number 1015322-F2, received May 12, 2020, requesting admittance to RDAP program [Id.];

5. Remedy ID Number 1015322-R1, received July 5, 2020, requesting admittance to RDAP program [Id. at 9];

6. Remedy ID Number 1045952-F1, received September 30, 2020, seeking reconsideration for RIS/ compassionate release [Id.];

7. Remedy ID Number 1015322-A1, received October 20, 2020, requesting admittance to RDAP program [Id. at 10];

8. Remedy ID Number 1065621-F1, received January 21, 2021, seeking

reconsideration for RIS/ compassionate release [Id.];

9.  Remedy ID Number 1065994-F1, received January 25, 2021, "wants med records to reflect med cond known by PA" [Id. at 11][5];

10. Remedy ID Number 1067319-R1, received January 29, 2021, seeking compassionate release [Id.];

11. Remedy ID Number 1079831-R1, received April 29, 2021, alleging staff misconduct [Id. at 12];

12. Remedy ID Number 1079717-F1, received May 6, 2021, requesting supplemental documents for his placement in the Special Housing Unit (SHU) [Id.]; and

13. Remedy ID Number 1082055-R1, received May 13, 2021, alleging staff misconduct [Id. at 13].

According to the declaration of Mr. Williams, remedy ID numbers provide information about the level where each remedy is filed:

> REMEDY ID: This section lists the remedy ID associated with the grievance. Each administrate grievance is assigned a specific remedy ID. The numerical portion of the Remedy ID before the hyphen is know as the Case Number which is used to track subsequent submissions or appeals of the same administrative grievance. Following the hyphen, there is a Submission ID comprised of one letter and one number. The letter indicates which level of the BOP administrative remedy program has received the grievance. The letter "F" indicates that the submission was received by an individual federal correctional facility. The Subsequent number indicates the number of times an inmate has submitted the same request at

---

[5] Plaintiff submitted as an exhibit a "Request for Administrative Remedy", received January 25, 2021, and bearing remedy ID number 1065994-F1. ECF No. 1-2 at 2. A document titled "Regional Administrative Remedy Appeal" exhibit also submitted by Plaintiff, appears to address the same issue, but bears no remedy ID number, and is not stamped as received by the Regional Office. Id. at 1. Even if Plaintiff prepared such an appeal to the Regional Office, there are no records that he filed the same, much less appealed that administrative remedy to the Central Office, as required.

> the same level of the BOP grievance program.  The letter "R" indicates that the submission was received by individual regional office.  The letter "A" indicates that the submission was received by the BOP's Central Office.

ECF No. 56-1 at 3.  Of the thirteen remedy IDs listed above, only number 7 was filed with the Central Office.  However, that remedy related to Plaintiff request to be admitted to the RDAP program.  Accordingly, it is clear that Plaintiff did not exhaust his administrative remedies for the damages alleged in the instant complaint.  In his response to the motion to dismiss, Plaintiff argues for the first time that he was thwarted from exhausting his administrative remedies, and that further attempts to exhaust would have been futile. ECF No. 61.

In _Jones v. Bock_, 549 U.S. 199, 216 (2007), the United States Supreme Court concluded that "failure to exhaust is an affirmative defense under the PLRA."   Although the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," the Court held "that Congress has provided in 1997e(a) that an inmate must exhaust [his claims] irrespective of the forms of relief sought and offered through administrative avenues." _Booth_, 532 U.S. at 741, n.6. Several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. _See_ _Ziemba v. Wezner_, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); _Mitchell v. Horn_, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); _Miller v. Norris_, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a

prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x. 295, 296 (5th Cir. 2003) ("If the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner.")  Consistent with other Circuits, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citing Aguilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)).

In his complaint, Plaintiff does not allege that he was prevented through no fault of his own from availing himself of available remedies, nor does he allege that institutional authorities refused to provide him the forms which were necessary to complete administrative exhaustion.  Rather, in his complaint Plaintiff claims he exhausted his claims against the Defendants.  However, a review of the documents submitted to the Court by Defendants and summarized in detail above, refutes this assertion.  The only documents submitted by the parties regarding exhaustion of a claim through the National Inmate Appeals office relates to a completely separate administrative remedy request, number 1015322-A1, seeking relief related to requested RDAP placement.  Further, Plaintiff did not allege in his complaint that he was thwarted from filing administrative remedy requests.  Instead, he raised that claim for the first time in his response to the motion to dismiss.  The undersigned finds Plaintiff's after the fact explanation for his failure to exhaust his administrative remedies unpersuasive.  In contrast, the documents presented by the Defendants demonstrate that Plaintiff did not file, much less exhaust, a Central Office administrative remedy related to his request for

relief herein.

Accordingly, the undersigned finds Plaintiff has failed to demonstrate that he has exhausted his administrative remedy request regarding any alleged wrongdoing by the Defendants.  Further, Plaintiff has failed to demonstrate that he was prevented, through no fault of his own, from exhausting available administrative remedies as relates to the alleged wrongdoing.  Accordingly, this Court is without jurisdiction.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).  Because this court lacks jurisdiction, this court cannot entertain the petition.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

It is further **RECOMMENDED** that Defendants' motion to dismiss or for summary judgment [ECF No. 55] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        August 19, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

17